NOT DESIGNATED FOR PUBLICATION

Nos. 116,605
116,606

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

FARMERS INSURANCE COMPANY,
*Appellee*,

v.

SAMANTHA MILLER,
*Appellee*,

GABRIELLE PALACIO, MATTHEW RAMAGLI, and LONNIE BAKER,
*Appellants*,

BRANDON MCGUIRE, QUICK KARS, HARLAN FORAKER, and JOSE ROSAS JR.,
*Defendants*.


LONNIE BAKER, et al.,
*Appellants*,

v.

SAMANTHA ANNE MARIE MILLER and VIOLET COLE,
*Appellees*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; TERRY L. PULLMAN, judge. Opinion filed March 2, 2018.
Affirmed.

*Steven L. Brave*, of Brave Law Firm LLC, of Wichita, for appellants Gabrielle Palacio, Matthew
Ramagli, and Lonnie Baker.

1

*Ron D. Martinek*, of Law Offices of Abbott & Bingley, of Oklahoma City, Oklahoma, for appellee Farmers Insurance Company.

*Derek H. MacKay*, of Brown & James, P.C., of Kansas City, Missouri, and *Timothy J. Wolf*, of the same firm, of St. Louis, Missouri, for appellee Samantha Anne Marie Miller.

*Stanford J. Smith* and *Samantha M. H. Woods*, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Wichita, for appellee Violet Cole.

Before ARNOLD-BURGER, C.J., HILL, and LEBEN, JJ.

HILL, J.:  This controversy arises from a settlement agreement resolving all claims arising from a May 2013 automobile accident. The Plaintiffs contend that the defendants owe them $15,000 more plus interest and they ask this court to reverse and remand the matter accordingly. Unpersuaded by the Plaintiffs' arguments, we affirm.

*Several lawsuits are resolved through a global settlement.*

When Samantha Miller was driving a vehicle rented by her great-grandmother, Violet Cole, she lost control of the car and crashed through a fence and into a house. The car caught fire. Lonnie Baker, Gabrielle Palacio, and Matthew Ramagli were her passengers. We will refer to them collectively as the Plaintiffs. On the date of the accident, Cole had two auto liability insurance policies—one with Allstate and one with Farmers. This accident spawned five lawsuits, three personal injury claims, and two declaratory judgment actions filed by the two insurance companies.

The Plaintiffs filed suit against Miller and Cole seeking damages for their personal injuries they sustained in the accident. The district court consolidated these cases. After that, Farmers filed a declaratory judgment action averring that no coverage existed under the intentional act exclusion to its policy because the wreck was the result of Miller's

reckless, wanton, and intentional conduct. The Plaintiffs counterclaimed against Farmers seeking personal injury protection benefits and the district court consolidated the action with a similar declaratory judgment action filed by Allstate.

Eventually, Farmers, on behalf of Cole (the owner of the car), sent a settlement offer to the Plaintiffs offering to settle the claims against Cole for $5,000 per plaintiff in exchange for a full release and dismissal with prejudice for all claims against Cole. In response, the parties negotiated a settlement.

The parties reached a global settlement agreement via telephone. Miller memorialized the agreement in an email to all parties. They had agreed to settle all five cases for $340,000. In the email, Miller asked how the total would be split among the individual plaintiffs so counsel could draft releases of liability. The Plaintiffs responded that Baker would receive $170,000, Palacio $70,000, and Ramagli $100,000.

Following up on their agreement, Miller sent drafts of general releases to Cole and the insurance companies. After Cole approved the releases, Miller circulated the general releases to all parties.

A few days later, Allstate advised the Plaintiffs that Farmers and Allstate had agreed to split the settlement payment equally and then forwarded three checks totaling $170,000 to the Plaintiffs. The Plaintiffs signed the releases in favor of Allstate and dismissed the case involving Allstate with prejudice. That portion of the settlement is not part of this appeal.

For its part, Farmers chose to apportion its share of the settlement between its two insureds—Miller and Cole—by attributing $155,000 coming from Miller, the driver, and $15,000 coming from Cole, the owner. Farmers then issued three checks in the amount of $5,000 to each plaintiff. These checks reflected the share of the settlement attributed to

3

Cole. The remaining portion of the settlement was met when the company issued a $30,000 check to Palacio, a $45,000 check to Ramagli, and an $80,000 check to Baker. These total $170,000, which was Farmer's half of the settlement. Farmers gave the checks to the attorneys for Miller and Cole to pass on to the Plaintiffs.
*The Plaintiffs' counsel wants the checks before the releases are signed.*

Miller's counsel stated in an email that he had the Farmers settlement checks but he wanted the signed releases before he would mail them. The Plaintiffs' counsel responded that he would send the releases after he got the checks. Miller's counsel then offered to set up a meeting to exchange the signed releases for the checks but the Plaintiffs' counsel did not respond. A few days later, the Plaintiffs' counsel again asked if Miller's counsel had mailed the checks. Miller's counsel responded that his client needed the signed releases before he could send the checks. The Plaintiffs' counsel argued that according to the language in the general releases, receipt of the settlement checks was a condition precedent to signing the releases and he threatened to sue Farmers for breach of contract and fraud if the checks did not arrive the next day. Miller's counsel did not send the checks.

True to his word, the Plaintiffs' counsel filed suit against Farmers, Cole, and Miller for breach of contract and fraud. The same day, Cole mailed the Plaintiffs the three $5,000 checks, releases for the Plaintiffs to sign, and journal entries of dismissal for the cases involving Cole. The releases contained somewhat different language than the general releases previously circulated by Miller. These separate releases created a controversy later. After the new lawsuit was filed, Miller mailed the Plaintiffs the remaining three checks. In total, the Plaintiffs received the $170,000 due from Farmers.

Having sent the checks, Miller's counsel emailed the Plaintiffs' counsel asking if he had received the settlement checks and asking for the signed releases. The Plaintiffs' counsel responded that he had received the settlement checks, but Miller and Farmers had

breached the settlement agreement and the checks would be used as evidence in the pending breach of contract suit. But this breach of contract suit was voluntarily dismissed without prejudice before an answer was filed.

Eventually, Miller, Cole, and Farmers all filed motions to enforce the settlement agreement. Miller and Farmers filed identical straightforward motions asking the court to enforce the settlement agreement, order the Plaintiffs to return the signed general releases, and dismiss all actions with prejudice. In addition to asking the court to enforce the settlement agreement, Cole's motion stated that she "was not a party to the settlement discussions . . . and, at times, was not even aware that the settlement discussions were ongoing."

Cole's counsel stated that she made a settlement offer to the Plaintiffs for a confidential amount in April. "It was Defendant Cole's understanding at that time and remains her understanding today, that the offer made on her behalf to each Plaintiff was incorporated and accepted by Plaintiffs as part of a global settlement among all parties." Cole acknowledged that she approved the draft general releases circulated by Miller's counsel. Cole argued that there was no term setting a deadline for receipt of the settlement checks or entitling the Plaintiffs to obtain settlement checks before signing the releases. She asked the court to "Order Plaintiffs to sign the releases sent to Plaintiffs and to allow Defendant Cole to file Journal Entries of Dismissal with Prejudice for each of the above-captioned cases."

For their part, the Plaintiffs responded that Miller, Cole, and Farmers had breached the global settlement agreement by demanding signed releases prior to paying the settlement and by failing to timely pay the settlement. The Plaintiffs asked that the cases proceed without the settlement agreement. The Plaintiffs also argued that Cole was attempting to enforce a different agreement that was never agreed upon by sending the three $5,000 checks and her own set of releases.

5

*The court unravels this tangle of confused positions.*

At the hearing on the motions, the parties agreed that they all formed a global settlement agreement. More specifically, Cole argued that there was a global settlement agreement between all of the parties. The terms were that Farmers and Allstate had to pay the Plaintiffs a total of $340,000 in exchange for the Plaintiffs signing general releases and the cases being dismissed with prejudice. Farmers and Allstate each had to pay half of the $340,000. Farmers' portion of the settlement attributed $15,000 to Cole and $155,000 attributed to Miller. Cole argued that the money had all been paid to the Plaintiffs and the releases should be executed.

The Plaintiffs argued that they were not seeking interest, but rather they wanted to rescind the agreement because Farmers, Cole, and Miller did not pay within 30 days. The following exchange between the court and Plaintiffs' counsel illustrates the complaint about the insurance company's failure to pay in a timely manner:

"THE COURT: . . . Why isn't there a settlement?

"[PLAINTIFFS' COUNSEL]: They did not pay the amount owed within the time frame we agreed upon.

"THE COURT: Have they paid it now?

"[PLAINTIFFS' COUNSEL]: They paid it on August 1st, by which time I'd already sued Farmers—

"THE COURT: Do you want to give all the money back?

"[PLAINTIFFS' COUNSEL]: I want to give their money back, yeah. I didn't cash their money.

. . . .

"THE COURT: Was there a provision or a specific time frame on Ms. Cole that was provided?

"[PLAINTIFFS' COUNSEL]: There is. . . .

. . . .

6

"[PLAINTIFFS' COUNSEL]:  When there's an insurance settlement, contract of insurance, which is what this global agreement was, 30 days is built in. If you don't pay the settlement within 30 days, there's interest on that.

"They did not pay within 30 days. They refused to pay any interest.

"THE COURT: How much . . . do you claim Ms. Cole owes?

"[PLAINTIFFS' COUNSEL]: *At this point we're going to rescind the contract. We have no interest.* (Emphasis added.)

"THE COURT: Prior to rescission of the alleged contract, what was your claim that Ms. Cole owed?

"[PLAINTIFFS' COUNSEL]: There was no settlement with Ms. Cole. There was a global settlement for $340,000. Per day from May 11th, that accrues at 167.67 a day, 5,100 a month. So by the time we settle in May, get the final payment, which we'd already rejected in August, whatever that comes out to is whatever it is. They refused to pay interest.

. . . .

"THE COURT: What amount of money do you claim Ms. Cole is supposed to pay under the purported settlement?

"[PLAINTIFFS' COUNSEL]: . . . Farmers was supposed to pay 170 on behalf of all the insureds. Allstate paid their half. Got what they required.

"There was never an agreement with Cole. It was a global settlement agreement to settle everything. . . .

"THE COURT: What money do you have on Ms. Cole's behalf?

"[PLAINTIFFS' COUNSEL]: She sent three $5,000 checks which haven't been cashed. Then Mr. Wolf on behalf of Miller sent the additional 155[,000] in three separate checks."

It is clear that all of the parties relied on the general releases circulated by Miller's counsel in their arguments. Regarding the releases, Cole's attorney stated:

"I did hold these checks for three weeks, and the reason that I did that was because the global releases that had been sent out, we had, as far as defense side of this case, the insurance company side, everybody had said, yeah, those releases look fine. Go ahead

7

and circulate those. Those were circulated. At no point did [Plaintiffs' counsel] ever agree to them, assent to them, say anything at all about those releases.

"And I will tell you, this case has gone on a long time, and it has been—there have been some sort of hard fought battles. And I didn't want to be in a position where all the money is turned over and we fight for another six months about release language and getting journal entries of dismissal on file, which is why I said, let's meet together, I'll hand you the releases, I'll hand you the checks. We'll get the releases all ironed out, and everybody can move on."

Miller's attorney cited to the court an exchange of emails between the parties. "On July 11th, I had asked to meet at the Plaintiffs' attorney's office and hand him the checks in exchange for a release. He didn't even respond. This whole email exchange kind of lays out the kind of gamesmanship that's been going on in this file."

The Plaintiffs' attorney responded:

"That was not what the release called for, number one. Number two, as indicated by those e-mails, that's July 11th. Two months after the agreement had been reached.

"On May 13th, Miller's own counsel, Daphne Halderman, circulated the releases that [Cole's attorney] just referred to, and everybody agreed that those were fine. No one objected to them at any point, including Ms. Miller's counsel here.

"The release speak for themselves. Say the receipt and sufficiency of the settlement funds happens first. Then they get the release.

"Miller's own counsel drafted that. Now where counsel comes in here and says, no, that's not the way it is. We want the releases, then we'll pay you because this was a contentious case.

"Well, it works on both sides. It was a contentious case. The defendants drafted the release. Before they send them to me, [Miller's counsel] circulated them to everyone else. They were all agreed upon. I never had any conversations with [Cole's attorney] about anything until she filed her motion on the 19th."

The parties then disputed whether K.S.A. 40-2,126 was applicable to this type of settlement agreement.

> The court, in a display of common sense and reasonable justice, ruled:

> "[T]here was a settlement achieved. The settlement is now trying to be set aside or disavowed for a very technical reason. I find that . . . there was substantial compliance with the intent of the settlement agreement. That both sides have some responsibility for dilatory and delaying conduct, but not to the level sufficient to set aside a settlement.
> "I'm going to grant the motion to enforce settlement. Based on the findings I've made on the record, I order the releases signed and delivered."

The court asked if there was anything further. We must point out again that the Plaintiffs did not ask for interest. The parties agreed to let the minute sheet serve as the journal entry with a transcript of the hearing attached. The Plaintiffs have appealed.

In a dramatic shift of position, the Plaintiffs have now abandoned their effort to rescind the settlement agreement, as they attempted in district court. Instead, in this appeal they contend that the district court, without knowing it, actually enforced two different settlement agreements—one between Farmers and the Plaintiffs and one between Cole and the Plaintiffs. In the Plaintiffs' view, ignoring the fact that Cole had contributed $15,000 and since Miller sent only $155,000 and had agreed to pay $170,000, Farmers still owes $15,000. Both Cole and Farmers maintain their positions that there was but one settlement between the parties—the global agreement—just as the district court had held.

*We hold the Plaintiffs' premise is faulty.*

Put simply, the record does not support the Plaintiffs' argument that Cole was trying to somehow enforce a separate settlement with them. We see no evidence in the

record of any separate agreement between Cole and the Plaintiffs. The evidence shows, instead, that Farmers offered to pay $5,000 to each plaintiff in exchange for a full release of liability for Cole and a dismissal of all claims against Cole. There is nothing in the agreement that states Cole would contribute $15,000 in addition to the $170,000 from Farmers, as the Plaintiffs contend.

Cole's counsel clearly argued that the only agreement she ever referred to was the global settlement agreement. Cole acknowledged that she had approved the draft general releases that Miller's counsel sent to the Plaintiffs. She never asked the district court to order the Plaintiffs to sign the releases she sent. It occurs to us that her separate releases may have been sent because she was tired of waiting for the Plaintiffs' counsel to return the general releases.

We must point out that from this record there was only one settlement agreement and one set of general releases presented to the district court for enforcement. The district court enforced the global settlement agreement and ordered the Plaintiffs to sign the general releases first circulated by Miller's attorney. The two insurance companies and the Plaintiffs have agreed to a sum of $340,000. That is what has been paid.

The Plaintiffs' arguments have shifted considerably on appeal. Issues not raised before the trial court cannot be raised on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). At no point did the Plaintiffs ask for an additional $15,000 before the district court. We are in no position to award such a claim. After all, as stated by the Plaintiffs' attorney, under the terms of the global settlement agreement, the Plaintiffs were to receive $340,000. Allstate paid $170,000. Cole sent the Plaintiffs $15,000 in three separate checks from Farmers. Miller sent the Plaintiffs the additional $155,000 in three separate checks from Farmers. In total, the Plaintiffs have been paid $340,000—the amount the parties have agreed to. The district court correctly ordered the general releases to be signed so these matters could be concluded.

10

*The Plaintiffs are not entitled to interest.*

The Plaintiffs also contend that the district court erred by failing to award interest under K.S.A. 40-2,126. They argue interest was due at the rate of 18 percent beginning May 11, 2016. They ask us to remand the cases to the district court to determine the amount owed. In response, Cole and Farmers argue that this issue was not preserved for review because the Plaintiffs did not seek interest from the district court. Rather, the Plaintiffs only discussed K.S.A. 40-2,126 for the proposition that the statute added an implied term to the settlement agreement that payment of the settlement funds was to be made within 30 days. They argue that we cannot review a decision on interest that the district court was never asked to make. The Plaintiffs respond by suggesting that the issue was brought up and, by ordering them to sign the releases, the district court effectively foreclosed the Plaintiffs' claim for interest.

We look first at the law. There is no doubt that the public policy in Kansas is that insurance claims must be paid promptly. The statute calls for the payments to be paid within 30 calendar days or the carrier must pay interest:

> "Except as otherwise provided by K.S.A. 40-447, 40-3110 and 44-512a, and amendments thereto, each insurance company, fraternal benefit society and any reciprocal or interinsurance exchange licensed to transact the business of insurance in this state which fails or refuses to pay any amount due under any contract of insurance within the time prescribed herein shall pay interest on the amount due. If payment is to be made to the claimant and the same is not paid within 30 calendar days after the amount of the payment is agreed to between the claimant and the insurer, interest at the rate of 18% per annum shall be payable from the date of such agreement." K.S.A. 40-2,126.

At the hearing on the motions to enforce the settlement, the Plaintiffs cited this statute in response to the court's question whether the settlement agreement contained a provision requiring payment within a certain time. The Plaintiffs argued that the

11

settlement agreement contained an *implied term* requiring payment within 30 days because of the statute. When asked how much was owed, the Plaintiffs responded, "At this point we're going to rescind the contract. We have no interest." Upon further prodding by the court, the Plaintiffs stated:

> "There was a global settlement for $340,000. Per day from May 11th, that accrues at 167.67 a day, 5,100 a month. So by the time we settle in May, get the final payment, which we'd already rejected in August, whatever that comes out to is whatever it is. They refused to pay interest."

When speaking about interest and failing to pay on time, the Plaintiffs' counsel stated that he did not want to get into that subject:

> "Farmers actually issued the checks to counsel in a timely manner or relatively timely. I think [Cole and Miller] were paid at the end of June and the first week of July. [Cole and Miller] just refused to send them to me to consummate the deal.
> "I don't know if Farmers did anything wrong at this point, which is why at this point I don't even want to get into that. My clients are wanting to rescind the deal. The tort cases against them should proceed, and we'll finish it that way."

The court ruled that there was substantial compliance with the settlement agreement and that both sides had some responsibility for dilatory and delaying conduct. The court granted the motions to enforce the settlement and ordered the releases signed and delivered. The court did not mention interest. The court did ask if there was anything further. The Plaintiffs responded that they would appeal. The time to first ask for interest is before the district court, not the Court of Appeals.

The Plaintiffs are bound by the position they took in district court. They cannot now, on appeal, ask for interest when they did not ask for interest before the district court. In fact, in our view, the Plaintiffs have waived interest. The Plaintiffs told the

court, "We have no interest" and they did not "want to get into that" because they did not know if Farmers had done anything wrong. Farmers issued the checks "in a timely manner or relatively timely" manner. The district court has made no specific ruling on the issue of interest that this court can review. There was no motion before the district court to award interest. Issues not raised before the trial court cannot be raised for the first time on appeal. *Cresto v. Cresto*, 302 Kan. 820, 849, 358 P.3d 831 (2015).

The judgments of the district court are affirmed.